## 1841. ATHENS *v.* CITY OF ATLANTA.

A municipality may, under its ordinances, punish for keeping intoxicating liquors on hand for the purpose of illegal sale; and it makes no difference in a particular case that the keeping of the liquor for this purpose was at a place of business or other public place. The municipal offense is distinct and separate from the State crimes which may have been incidentally committed in connection with it.

Petition for certiorari, from Fulton superior court—Judge Pendleton. April 5, 1909.

Argued May 4,—Decided May 18, 1909.

*Rosser & Brandon, Moore & Branch,* for plaintiff in error.

*William P. Hill, James L. Mayson,* contra.

POWELL, J. The plaintiff in error, Athens, was convicted in the police court of Atlanta for the violation of §1537 of the City Code, which is as follows: "Any person, firm, or corporation who shall keep for unlawful sale in any store, house, room, office, cellar, stand, booth, stall, or other place, or shall have contained for unlawful sale in any barrel, keg, can, demijohn or other package any spirituous, fermented, or malt liquors for such sale, shall, on conviction, be punished by fine not exceeding five hundred dollars, or imprisonment not exceeding thirty days, either or both, in the discretion of the court." The proof showed that the defendant had some whisky at his restaurant in Atlanta and sold some of it. He applied for the writ of certiorari; the judge of the superior court refused it, and he excepts.

Counsel for the plaintiff in error, in their argument, seem to concede that the ordinance is, so to speak, abstractly valid, under the authority of *Callaway* v. *Mims*, 5 *Ga. App.* 9 (62 S. E. 684),

and the cases there cited; but they contend that it is unenforceable as applied to the facts of the present case. They insist that since the State law makes it a misdemeanor for any person to have intoxicating liquor on hand at his place of business or at other public places, the ordinance can not be applied to a case where the defendant's act of keeping the liquor for unlawful sale was at his place of business or other public place; because this would allow the city to punish for the identical transaction cognizable by the State courts under the law just mentioned. They analogize the case to that of *Kassell* v. *Savannah,* 109 *Ga.* 491 (35 S. E. 147), and to that of *Pennington* v. *Newnan,* 117 *Ga.* 701 (45 S. E. 65). In the *Kassell* case the court said: "We do not mean to say that the second section of the city ordinance in question should be treated as absolutely a void enactment. That portion of the ordinance simply provided generally against the sale of any spirituous or intoxicating liquors of any character on Sunday. If a person who committed such an act was not one whose business or ordinary calling involved the work of retailing spirituous or intoxicating liquors, the principle herein decided would not apply to his case. In the present case, however, it appears from the record that if the accused was guilty of any offense at all, it consisted in pursuing her business, or the work of her ordinary calling, on the Lord's day within the meaning of the penal law of the State on that subject." In the *Pennington* case the ordinance prohibited the carrying on of trade or traffic on the Sabbath. The Supreme Court held that the ordinance could not be applied to one whose only offense against it was the carrying on of his ordinary trade, as that was an offense against the criminal laws of the State. We fully recognize the soundness of the principle of these and similar cases; and if the ordinance now before us prohibited merely the keeping on hand of intoxicating liquor generally, these cases would be clearly in point, and we would have no hesitancy in holding that such an ordinance would have no validity as applied to a case where the defendant kept the liquors on hand only at a place of business or other public place.

The fact that the defendant kept the liquors at his place of business created no offense under the ordinance; the fact that the place where the liquors were kept was a place of business was in no wise essential to the investigation under the ordinance;

only the fact that they were kept, and that the intent or purpose of the keeping was an unlawful sale of them, entered into the gist of the transaction cognizable in the police court. The purpose of the keeping is without importance as applied to the State offense; and is altogether important as applied to the city offense. To have kept the liquors at the restaurant to drink himself, or to give away, or to induce trade, or to manufacture into other beverages, would have been a violation of the State law, but not of the municipal law. The city offense never came into existence until the defendant formed the intent and purpose of making an unlawful sale. The fact that he had already violated the State law by bringing the liquors to his place of business, and that he was continuing to violate it by keeping them there, did not put him in a position where he could not aggravate the transaction by adding to it an additional element, not included in the State offense, thereby converting it into a municipal offense.

This brings us to the contention of the plaintiff in error that if the intention or purpose of the actor in the transaction is to be considered as such an element of the municipal offense as to distinguish it from the crime under the State law, then to allow the municipality to hold jurisdiction to punish because of this distinction alone would be to permit punishment for a mere state of mind. The argument is not valid. Intention, state of mind alone, is oftentimes the essential element in distinguishing the lawful from the unlawful, and in differencing one offense from another. To take property from the lands of another without an animus furandi is trespass; with the intent to steal, it is larceny. The specific intent to kill differences assault and battery from an assault with intent to murder. An intention to defraud distinguishes the criminal sale of mortgaged property from the innocent. A reasonable fear of an apparent, though not actual, danger to one's life, a mere state of the slayer's mind, converts the killing from murder to justifiable homicide. To have intoxicating liquors at one's place of business to drink or to give away is unlawful, but it lacks that aggravation which characterizes the keeping of it for the purpose of unlawful sale; just as to commit assault and battery in a private place is unlawful, but lacks the element of aggravation which converts it into a municipal offense if it be committed in a public street.

Suppose the city ordinance were a State law, would a conviction of the offense created therein bar a prosecution under the statute upon territory of which the ordinance is said to trespass, or vice versa? Or, to state it more concretely, suppose that prior to the adoption of the general prohibition law there had been enacted a special law for Fulton county, making it criminal for any person to have on hand intoxicating liquor for the purpose of unlawful sale, and the defendant had been indicted and had been convicted in the State court for that offense upon proof that since the date of the enactment of the general prohibition law he had kept the liquor on hand at his restaurant for the purpose of unlawful sale, would this conviction bar another prosecution under the prohibition law for keeping it on hand at his place of business? We think it would not. The two transactions would be legally distinct. *Veasy* v. *State,* 4 *Ga. App.* 845 (62 S. E. 561), and cases cited. The municipal offense in this case is sandwiched (if I may use this word to express the idea) between two State offenses, the essential elements of one of which (the keeping of the liquor and the fact that the place where it was kept was a place of business) furnish one of the elements of the city offense and an incidental detail connected with the transaction physically considered; and the commission of the other, the actual sale, supplies the proof as to the other essential element, namely that the keeping was for the purpose of unlawful sale. But does this extinguish the independence and separate identity of the municipal offense or merge the transaction wholly into the State crimes? Let us see if we can not suppose a transaction in which the separate State offenses may be similarly involved without any one of them being merged into one or both of the others. A person at a church, having a pistol concealed in his pocket, shoots at another from the pocket through the lining and without revealing the existence of the pistol otherwise. He may on this state of facts be separately tried and convicted for the three offenses, carrying a pistol to a church, carrying a pistol concealed, shooting at another. See *Veasy* v. *State,* supra. To this transaction the crime of carrying the pistol concealed stands almost identically in the same relation as does the municipal offense of having had the liquor on hand for the purpose of unlawful sale stand to the two State crimes involved in the facts

of the case now before us. In the supposed case the elements of the crime of carrying the pistol to the church (the carrying and the fact that the place was a church) furnished one of the elements of the concealed weapon case (the carrying), and an incidental detail connected with that transaction, physically considered; and the commission of the other offense,—the fact of the shooting,—supplies the only proof of the fact that the defendant had a pistol concealed; for it was stated in the supposed facts that the existence of the pistol in the defendant's pocket was not otherwise revealed.

We went into all this question fully in the case of *Callaway* v. *Mims,* supra. In that case we discussed the whole question at length, and indulged in an extensive citation of authorities. That case, at least to the extent of the line of reasoning there presented, controls this one. We see no reason to change the views we there expressed. We would not again have dealt so lengthily with the question if it were not for the ability and strenuousness with which we are urged by counsel to limit that case and to distinguish the present transaction upon its particular facts.

We have had several of these cases involving the right of municipalities to punish under ordinances like the one before us; and in almost every case it was argued that it is a dangerous policy to permit police courts, in which no jury trial is obtainable, to impose such severe penalties as most of the city charters allow, for the violation of these ordinances on a subject as to which the municipalities hold jurisdiction by so small a margin and by so slight a shade of distinction. There may be force in this argument (personally, some of the judges of this court think so) ; if so, it addresses itself to the General Assembly, and not to the court. However, there is one obvious way by which these complaining offenders may escape all this hardship—by respecting and obeying the law.          *Judgment affirmed.*