ALBANY THEATRE INC. *et al. v.* SHORT, solicitor-general, *et al.*

No. 8064. JULY 20, 1931.

*Bennet & Peacock,* for plaintiff in error.

*Robert B. Short, solicitor-general, E. L. Smith,* and *S. B. Lippitt,* contra.

RUSSELL, C. J. This is the second appearance of this case. The defendants assigned error upon a judgment granting an interlocutory injunction forbidding the exhibition of certain moving-pictures upon the Sabbath day. On July 18, 1930, the Justices of the Supreme Court being evenly divided in opinion, it was announced that the judgment was affirmed by operation of law. 171 *Ga.* 57. No expression of opinion on the part of any Justice was furnished for publication, except by Mr. Justice Hill. Those who

concurred in the judgment of affirmance did so because they were of the opinion that the grant of the injunction was a sound exercise of judicial discretion, and not because they agreed with all the statements made by Mr. Justice Hill, or all of his rulings of law; and they are not bound thereby.

The plaintiffs in error made a motion for a rehearing, which was denied on September 13, 1930, because it would have required the vote of four members of the court to grant the motion; and the court was equally divided, as it had been in the original consideration of the case upon review. Mr. Justice Hill submitted his views upon the motion for a rehearing, and these were published. 171 *Ga.* 75-81 (154 S. E. 895). Neither the original opinion by Mr. Justice Hill nor what was said upon the motion for rehearing purported to be the expression of any other member of the court. The syllabus on page 57 does not purport to be more than the expression of the individual views of Mr. Justice Hill. The case afterward came on for trial in the superior court. No evidence was offered in addition to that which was presented upon the interlocutory hearing; and the court directed a verdict in favor of the plaintiffs. On the present writ of error the following exceptions are taken:

■ That the court erred in peremptorily instructing the jury to find said verdict, for the reason that there were issues of fact in the case made by the pleadings and evidence, which should have been submitted to the jury, among which are (1) as to whether the moving-picture exhibition sought to be enjoined was being at the time of filing of the suit, or was intended to be in future, operated by the Albany Theatre Inc., or by Albany Post. No. 30 of the American Legion; and (2) as to whether the exhibition made at the time of filing said suit, and intended to be made in the future, was effected by and through the employees of the theatre company, or the employees of Albany Post. No. 30 of the American Legion (the intervenors) on their own account; (3) as to whether in the operation of said exhibition, as it was at the time of the filing of said suit and was intended to be in the future, there was or was not to be the sale of any tickets or the charge of any price for admission thereto, or whether there were to be merely voluntary contributions made by the persons attending the exhibition to the charities of intervenors; (4) as to whether the money

received from the public was at the time of the filing of said suit, and was intended in future, to be "turned over to the local Post of the American Legion for the benefit of its underprivileged children's program," or whether such money was, or was in future intended to be, contributed by the persons attending the exhibitions directly to said American Legion for the benefits of said charities and devoted to and belonged to such American Legion charities, from the very moment of the contribution; (5) as to whether such picture exhibition, as operated at the time of the filing of said suit, and intended to be operated in the future, constituted "a work of charity" or "a work of necessity" within the meaning of the Sunday laws of Georgia; (6) as to whether the picture exhibitions as operated at the time of the filing of the suit, and as intended to be operated in the future, constituted such a public nuisance as could be enjoined by a court of equity; and (7) as to whether the picture exhibition would divide the community into factions and cause factionalism and strife and dissension, "and other issues."

■ That (a) plaintiffs failed to show that the acts of the defendant and intervenors constituted such a public nuisance as could be enjoined; (b) under the pleadings and the evidence there was an issue of fact as to whether such acts constituted a public nuisance, and it should have been submitted to the jury.

■ That the action of the court was error, regardless of all other points in the case, because (a) the acts of defendants and intervenors were not shown to constitute unlawful acts or crimes, but said acts appeared to be works of charity and necessity and not the pursuit of the business or work of the ordinary callings of the defendants and intervenors on the Lord's day; and (b) there was an issue of fact as to whether such acts were works of charity and works of necessity and not the pursuing of the business or work of the defendants' and intervenors' ordinary calling, which should have been submitted to the jury.

■ That the court erred in overruling the motion for new trial.

The first question which arises for determination is as to the effect of the prior judgment of this court upon the pending review. When the case was here before, the question presented was whether or not the court erred in granting a temporary injunction restraining certain exhibitions which it was alleged were to be had either by the Albany Theatre Inc. or Albany Post. No. 30 of the American

Legion, or conjointly by these two associations in participation with each other. The judgment was affirmed by operation of law, because a majority of this court could not agree. The question now before us is, what was the legal effect of this court's failure to agree upon the future proceedings and progress of the case? What should, as a matter of law, be the effect of this kind of a judgment, forced by the necessities of the case, upon the progress and procedure of the litigation in the future? It is well-settled law that a decision of the Supreme Court upon a naked proposition of law in a particular case, even though it be erroneous as a matter of abstract law, becomes the law of that case. But does this result follow an affirmance by operation of law by reason of an equal division of this court, all the members of which are present and participating, in such a sense that although there may have been errors of law in the judgment of the lower court, no matter how grievous these mistakes may have been, there can never in the future be afforded any opportunity for review, and especially where issues of fact as well as of law were presented to the trial court? It is to be borne in mind that when this case was here merely upon exception to an interlocutory injunction the rule prevailed that upon conflicting evidence the grant or refusal of an interlocutory injunction is so largely within the discretion of the trial court that his discretion will not be interfered with unless it is plain that there has been an abuse of discretion. This rule has been so liberally applied that it is paramount in such proceedings. Nor can it be said that, under the rule as to the law of the case, the conclusion reached by the trial judge on interlocutory hearing shall be so final as to compel a jury, as a matter of law, to adopt the view of the court as to testimony upon material issues of fact. It would seem that to ask this question would require an answer in the negative. The reason underlying the rule in cases of applications for interlocutory injunction is based upon the proposition that in interlocutory hearings the court takes the place of a jury; and for this reason courts of review must, as a general rule, accept the findings of fact reached by the judge of the superior court. When the question arises as to whether a permanent injunction shall be granted, the general rule of procedure is quite different; and as to any issuable facts which may be presented, the truth is to be found by a jury before it is embodied in the decree of a chan-

cellor. So far as we are aware, there is no difference between equity and law as to the proposition that jurors are the exclusive judges of testimony submitted to them, and that to the jury and not the court is accorded the prerogative of raising reasonable deductions and inferences which legitimately may be drawn from the testimony. If this be so, it would not seem to be within the power of the court to raise, as a matter of law, all inferences or deductions from testimony which can be construed in more than one light. To say that the court, to the exclusion of the jury, can determine what construction should be placed upon testimony illustrating motive or purpose, when the intention of the parties in a case involving the violation of a penal law is to be found, would in our opinion be in derogation of all our former rulings upon this point. Such decisions of this court as that of *Williams* v. *State,* 152 *Ga.* 498 (110 S. E. 286), *Frank* v. *State,* 141 *Ga.* 243 (80 S. E. 1016), and numerous others might be referred to, in which the former rule, that in the trial of one charged with crime proof that the defendant had previously committed other crimes was inadmissible, has been abrogated upon the sole ground that proof of the commission of a crime of the same nature may enable a jury to determine the motive of the defendant in the commission of the act which is charged against him as a crime, or the fact that he committed the former crime may be a circumstance from which the jury may determine, in connection with other evidence, whether the accused is in fact guilty of the crime for the commission of which he is being tried. As said in *Green* v. *State,* 172 *Ga.* 635 (158 S. E. 285) : "That the statements made were, in one sense, most prejudicial, can not be questioned. But by gradual evolution, the rule that the character of a defendant in a criminal case can not be put in issue or attacked has been gradually chiseled away and finally located in the shadow of other principles, the application of which has been deemed necessary for the enforcement of the criminal laws." There are many features of the evidence in this instance as submitted to the jury in the trial of the case now sub judice (a mere repetition of the testimony before the trial judge upon the application for interlocutory injunction) which necessarily depend upon inferences which must be deduced from the circumstances of the case, just as the motive with which certain acts were committed may be determinative of

the question as to whether or not the crime was committed. It is an ancient principle embodied in the Code that a crime consists of a union and joint operation of act and intent. It is equally true that every man is presumed to intend the legitimate consequences of his own acts; and yet if proved facts are susceptible of two constructions, the one consistent with guilt and the other with innocence, it is a universal rule that it is for the jury to determine this question, and further they are required to give preference to the construction which is consistent with innocence. So we are of the opinion that, at least in a case of an application for interlocutory injunction, the result reached by the court as to matters of fact is in no sense binding upon the court in the subsequent trial, where all issues of fact should properly be submitted to the jury for their determination. Nor are issues of law settled by the court in an interlocutory hearing binding upon the court, if the particular law as stated by the court would not be the same should a different construction of the facts lead to a different inference by the jury on final trial. The adoption of any other rule of evidence would deprive parties of the right of trial by jury upon issuable facts, in violation of the constitutional guaranties upon that subject. "Any person who shall pursue his business, or the work of his ordinary calling, on the Lord's day, works of necessity or charity only excepted, shall be guilty of a misdemeanor." Penal Code, § 416. In *Williams* v. *State,* 167 *Ga.* 160 (144 S. E. 745, 60 A. L. R. 747), this court by a unanimous bench held that the sale of gasoline on Sunday was an act of necessity when the sale was made to a traveler upon his journey. The transaction was considered as a matter of necessity. The Code excepts from the operation of the penal law acts of charity as well as acts of necessity. In *Williams* v. *State,* supra, were given reasons with authorities in support of exceptions in favor of necessity and charity, which bring them without the general rule that no person shall on the Sabbath day pursue the business of his ordinary calling. In the light of our present civilization, it seems to us that an organization such as the American Legion, and similar associations, might with far better grace be placed under the exception provided for acts of charity than the sale of gasoline on Sunday can be placed upon the footing of one of the acts of necessity. If the jury under the testimony in this case should find that the net

proceeds of all exhibitions to be made in the future is to be devoted to the purpose of aiding underprivileged children, it is obvious that the work is one of charity, as well as most necessary. Under the testimony a finding would have been authorized that this was the sole purpose of the exhibitions; and therefore we think that the court erred in withdrawing from the jury their right to pass upon the testimony and draw such inferences therefrom as were in their judgment reasonable, as to each of the questions of fact presented by the testimony, with one exception. In one assignment of error it is alleged that the court should have submitted to the jury the question as to whether the picture exhibition might divide the community into factions and cause factional strife and dissension. We consider this exception irrelevant, and therefore without merit. The question which the jury should have been permitted to pass upon was whether the proposed exhibitions were acts of necessity and charity, or either, which excepted them from the general rule announced in § 416. Whether these performances should create factions or not is wholly immaterial. We deem further discussion unnecessary; holding that all material issues which could enable the court to decree that the performance would constitute a continuous nuisance, or that for other reasons the exhibitions should be permanently enjoined, should have been submitted to the determination of a jury; and that it was error for the judge to take the case away from the jury and assume to himself the prerogative of passing upon all issues of fact.

*Judgment reversed. All the Justices concur, except Hill, J., who dissents.*